## Securex Company, Inc., v. Philadelphia Air Transport Co.

*High, Swartz, Flynn & Roberts,* for plaintiff.
*Duffy, McTighe & McElhone,* for defendant.

DANNEHOWER, J., January 8, 1951.—This case comes before us on preliminary objections to plaintiff's complaint in assumpsit, wherein it is claimed that certain compensable damages were sustained because of defendant's failure to manufacture and deliver 300 electric solenoid operated ticket registers to plaintiff under the terms of a written contract. Plaintiff alleges defendant had knowledge of a contract of resale between plaintiff and a third party for 200 of the registers at the time the contract presently in litigation was signed, and with respect to the other 100, alleges they could have been resold for the same price. It therefore claims as damages for all 300 registers the difference between the contract price and the contract of resale price.

While not objecting to the allegations set forth to sustain the measure of damages claimed for the 200 registers, defendant contends that the complaint is defective in its allegations supporting the claim for the same measure of damages for the 100 registers in that it fails to aver that plaintiff had any contract of resale for these registers, or that defendant had any knowledge of such contract of resale. Without such averments, defendant contends in its preliminary objections that plaintiff cannot recover anticipated profits as damages.

The transaction here involved, of course, is governed by the applicable provisions of the Sales Act. The Act of May 19, 1915, P. L. 543, §67, 69 PS §312, provides that where a seller wrongfully neglects or refuses to deliver goods, damages are measured as follows:

"Second. The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract.

"Third. Where there is an available market for the goods in question, the measure of damages, in the ab-

sence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

Section three of the above act was interpreted in Norwood Lumber Corporation v. McKean et al., 153 F.(2d) 753-55 (3d cir. 1946) and leads clearly to the conclusion there stated that:

"If there is an available market for the goods the rule as to damages is crystallized into a rule that recovery is the difference between the contract price and the market price."

It is immediately apparent that unless a buyer allege in his complaint that the product he has engaged to purchase is unobtainable on the market, or that there are special circumstances calling for the application of a different rule, he is precluded from demanding any more than the difference between the contract price and the price for which he could have obtained the goods on the open market.

Where goods are in fact not obtainable on the open market, the Sales Act suggests only that the damages are those "directly and naturally resulting in the ordinary course of events". This is no more than a general statement of the prior law, to which we must now refer.

In the situation where goods cannot be obtained on the market, it is generally stated that the damages are measured by the actual loss which the buyer can show he has sustained: McHose v. Fulmer, 73 Pa. 365 (1873). More specifically, however, the question of whether where the buyer has no contract of resale, he may claim as damages profits he could have made on resale, was discussed as a matter of dicta in Seward

v. Pennsylvania Salt Mfg. Co., 266 Pa. 457, 462 (1920) as follows:

"It does not appear that the product in question was not obtainable in the open market, if it did, plainitff might recover his actual damages, that being the rule in such case . . . it may be urged that in such case he could have resold it at a profit; but how can it be determined that an article without market value can be resold at a profit? The chances thereof are too speculative to form the basis of a recovery . . . Moreover, anticipated profits on a resale are not recoverable unless in contemplation of the parties when the original contract was made."

It will be noted that the court in the Seward case refers to two essentially different situations, that where an article is not obtainable on the market, and that where a product is without market value. If it be alleged that a product is not obtainable on the market, the question of whether it has a market value for purposes of resale is a question of proof, and if special circumstances show that it was within the contemplation of the parties, and the proof of resale value is sufficiently definite and certain, such damages may be allowed: Norwood Lumber Corporation v. McKean et al., supra.

In view of the fact that plaintiff's complaint does not allege that the goods are unobtainable on the open market, nor that there are special circumstances here present, the complaint does not sustain the measure of damages demanded as to the 100 machines.

And now, January 8, 1951, for the foregoing reasons, defendant's preliminary objections are sustained, and plaintiff is allowed 20 days within which to plead over and file an amended complaint.